IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01210-RM-NYW

JANE DOE,

      Plaintiff,

v.

SCHOOL DISTRICT NUMBER 1, DENVER, COLORADO, also known as Denver Public Schools ("DPS");

TOM BOASBERG, in his individual and official capacities as Superintendent of Denver Public Schools;

ROXANNE STERN, in her individual and official capacities as teacher/educator of Denver Public Schools; and

JULIE CATHERINE MURGEL, in her individual and official capacities as principal of Denver Center for International Studies at Montbello School,

      Defendants.

---

## DISTRICT DEFENDANTS' MOTION TO DISMISS

---

Defendants Denver Public Schools ("District"), Tom Boasberg, and Julie Catherine Murgel (collectively, the "District Defendants"), by and through their undersigned attorneys, move pursuant to F.R.C.P. 12(b)(1) and (6) to dismiss Plaintiff's Complaint, as follows:

### I.    Certification

Counsel certifies they conferred with Plaintiff's counsel via telephone on June 20, 2019 about the specifics of this Motion, which is opposed.

### II.    Introduction

This is a sex discrimination case stemming from Plaintiff's allegation that she was sexually assaulted by an adolescent French citizen while staying at his home during an overseas trip. Plaintiff's first claim asserts that the District was deliberately indifferent to her allegation of sexual assault in violation of Title IX. Her second and third claims assert that former Superintendent Tom Boasberg and former District school Principal Julie Murgel discriminated against her on the basis of her sex in violation of 42 U.S.C. § 1983. Plaintiff's fourth claim asserts that Boasberg and Murgel violated the "Claire Davis School Safety Act," § 24-10-106.3, C.R.S. by failing to prevent the alleged sexual assault. Plaintiff's fifth claim asserts that Murgel violated § 19-3-304, C.R.S., Colorado's Mandatory Reporting Law, by failing to report the alleged sexual assault. Each claim against the District Defendants should be dismissed for lack of jurisdiction or failure to state a claim for which relief can be granted.

## I.     Relevant Allegations in the Complaint

### 1.  Plaintiff is assigned to board with a male host student on her trip to Brest, France.

Plaintiff was a 17-year-old, eleventh grade student at the District's DCIS Montbello school ("DCIS") during the 2016/17 school year. Compl., ¶ 11. In the spring of 2017, Plaintiff was enrolled in a French class. *Id.* Working with a student travel international educational experience program, Denver Sister Cities, Plaintiff's teacher, Roxanne Stern ("Stern"), helped organize a trip to Paris and Brest, France, for students, from March 24, 2017 through April 8, 2017. *Id.*

During part of the trip, Plaintiff stayed with a host family in Brest. Plaintiff was informed that she would be placed with a host family with a "daughter" in the household. *Id.* at ¶ 12. Prior to leaving for the trip, Plaintiff emailed her host family and learned that her host family had a son,

not a daughter. *Id.* at ¶ 13. Plaintiff also learned that her assigned host family was also hosting "another male high school student from the United States at the same time." *Id.* at ¶ 17.

Policy JJH-Student Travel and Field Trips, and its regulation, JJH-R (the only District policies that address student travel and field trips) do not address rooming arrangements for overnight trips, nor do they prohibit opposite sex housing assignments. *See* Ex. A, Policies JJH and JJH-R.[1] The Brest trip documents also do not address housing arrangements, but state that students cannot "enter the lodging accommodations of any other *student* unless with permission of the occupant(s) and only if of the same sex." Ex. B, Trip Agreements, p. 4 (emphasis added).[2]

Because Plaintiff believed she was supposed to be paired with a host family with a daughter, approximately one week before the trip she complained to Stern that she was placed with a host family with a son. Compl., ¶¶ 14, 16, 18. Plaintiff asked Stern to change her lodging assignment to a family with a daughter. *Id.* at ¶ 16. Stern did not attempt to make other arrangements and refused to change the placement because "there was no time." *Id.* at ¶¶ 17-18. Stern failed to inform DCIS Principal Julie Murgel, Plaintiff's parents, or anyone else, that Plaintiff was assigned to a host family with a son rather than a daughter. *Id.* at ¶ 21. Had she done so, Murgel "might have instructed Defendant Stern to find alternate housing for Plaintiff." *Id.* Because Plaintiff agreed to abide by Stern's directives on the trip, she had no alternative to staying

---

[1] The complaint refers to the District's Student Travel and Field Trips Policy (albeit by incorrect name). *See, e.g., id.* at ¶15. A defendant may submit an indisputably authentic copy of a document referred to by a complaint with a motion to dismiss without converting it to a motion for summary judgment. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-84 (10th Cir. 1997).

[2] The complaint refers to "policies" and acknowledgements she signed for the trip. *See, e.g., id.* at ¶14  A defendant may submit an indisputably authentic copy of a document referred to by a complaint with a motion to dismiss without converting it to a motion for summary judgment. *GFF Corp*, 130 F.3d at 1384-84.

at the same house with the male students. *Id.* at ¶¶ 28-29; Ex. B. Plaintiff did not share a bedroom

with any male students; she had her own bedroom at the host family's house. *Id.* at ¶ 33.

**2. The male host student sexually assaults Plaintiff.**

Plaintiff stayed with the host family in Brest for approximately one week. *Id.* at ¶31. Within

a few days of her arrival in Brest, the male host student began "coming onto" Plaintiff and

"grooming her for sex." *Id.* at ¶¶ 30-31. The male host student engaged in "unwanted physical

touching" and stated that it was the "common local customs and French cultural traits." *Id.* at ¶ 31.

Plaintiff found his advances to be "aggressive" and "unwelcome." *Id.* at ¶ 33.

Plaintiff spent much of her time in Brest with the male host student, attending his classes

and spending evenings with him. *Id.* at ¶ 33. Because of the male host student's behavior, Plaintiff

spent much of her time at the host home in her own room. *Id.* On or about April 4, 2017, the last

night of Plaintiff's stay in Brest, the male host student sexually assaulted Plaintiff. *Id.* at ¶ 35.

On April 5, 2019, the DCIS students traveled to Paris. *Id.* at ¶ 38. There, Plaintiff told

another female DCIS student, her closest friend on the trip, about the sexual assault. *Id.* Plaintiff's

friend encouraged her to tell Stern. *Id.* On April 6, 2017, at 11:30 p.m., Plaintiff told Stern about

the assault. *Id.* at ¶¶ 38, 58. Stern told Plaintiff that she was "sorry" and that it was "not [Plaintiff's]

fault." *Id.* at ¶ 39. Stern did not report the incident to the French police, French school

administrators, the host family, anyone at DPS including Murgel, or Plaintiff's parents. *Id.* at ¶ 39.

Stern did not offer Plaintiff any medical or psychological support. *Id.* at ¶ 43. The students and

chaperones returned to Denver on Saturday, April 8, 2017. *Id.* at ¶ 44. Plaintiff's parents picked

her up from the airport, but Stern did not tell them about the sexual assault. *Id.* at ¶ 44.

**3. Stern reports the sexual assault to Murgel.**

Stern and the students returned to school on Monday, April 10, 2017. *Id.* at ¶ 45. That day, Stern told Murgel that Plaintiff was sexually assaulted while in France. *Id.* at ¶ 45. Murgel immediately reported the assault to social worker Sarah Endicott in a meeting Murgel held with Stern, Endicott, DCIS' Dean Wilson, Plaintiff's mother, and later, Plaintiff. *Id.* at ¶ 46. Murgel offered Plaintiff and her mother school-based mental health resources and support but told them that it would be difficult to pursue criminal charges against the male host student because the assault occurred in another country. *Id.* at ¶ 46. Murgel told Plaintiff and her mother that she was "sorry." *Id.* Immediately after the meeting, Endicott, with Plaintiff, reported the assault to the Denver Police Department and DPS School Resource Officer Bernard Henry. *Id.* at ¶¶ 47, 57. That same day, Murgel either terminated Stern or forced her to resign. *Id.* at ¶ 49.

After reporting the assault on April 10, 2017, Plaintiff was depressed and did not return to school. *Id.* at ¶ 51. Plaintiff missed cheerleading practice, her classes, and her grades declined. *Id.* at ¶¶ 51-52. She received the "worst grades of her high school career" during the spring semester of 2017. *Id.* at ¶ 52. The District offered Plaintiff various accommodations as a result of her trauma, assigned her a social worker and placed her on a "504 Plan." *Id.* at ¶¶ 53-55. The social worker "diagnosed" Plaintiff with post-traumatic stress disorder. *Id.* at ¶ 53.

## II.    Standard of Decision

"Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction." *Noflin v. Garfield Cnty.*, 2017 WL 2001631, *2 (D. Colo. May 12, 2017). "[I]t calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint." *Id.*, *citing Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994). "The burden of establishing subject matter

jurisdiction is on the party asserting jurisdiction." *Id.*, *citing Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

"In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pled allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party." *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001). "With regard to what must be pled to avoid dismissal, the Supreme Court in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), described the standard that must be met as 'facial plausibility.' In this context, 'plausibility refers to the scope and degree of specificity of the allegations in the complaint.'" *Id.* "In this regard, the plaintiff must do more than articulate a set of facts that could 'conceivably' or 'possibly' give rise to a claim; he must 'nudge his claims across the line from conceivable to plausible.'" *Id.* Conclusory allegations need not be considered. *Id.*

### III.    Argument

**A.  Plaintiff failed to state a claim for Title IX sexual harassment.**

Under Title IX, peer sexual harassment is actionable if it is so severe as "to have the systemic effect of denying the victim equal access to an educational program or activity." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 652 (1999). To state a claim for Title IX sexual harassment, Plaintiff must show that a school district official was: "(1) deliberately indifferent to sexual harassment; (2) of which there was actual knowledge; (3) and the harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *J.M. ex rel. Morris v. Hilldale Independent Sch. District No. 1-29*, 397 F. App'x 445, 450 (10th Cir. 2010) (citing *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999)); *see also Rost v. Steamboat Springs RE-2 Sch.*

*Dist.,* 511 F.3d 1114, 1119 (10th Cir. 2008). Significantly, Title IX "precludes liability where the school district could not have remedied the harassment because it had no knowledge thereof or had no authority to respond to the harassment." *Murrell v. Sch. Dist. No. 1,* 186 F.3d 1238, 1246 (10th Cir. 1999). Plaintiff's Title IX claim fails because Title IX does not apply to the circumstances of Plaintiff's assault. Moreover, Plaintiff has not sufficiently pled that the District had actual knowledge of sexual harassment or was deliberately indifferent to it.

      **1.  Title IX is not applicable to Plaintiff's assault.**

Title IX "limit[s] a recipient's damage liability to circumstances wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs." *Id.* (internal quotations and citations omitted). Title IX liability does not attach where the individuals in question did not have the authority to supervise the harasser and end the harassment. *Id.* at 1247. *Murrell* and its predecessors contemplate that Title IX liability only attaches for peer harassment where both students attend the district or school in question.

Here, Plaintiff alleges that she was assaulted by a non-District student at his home on what she described as a school-sponsored trip. Taking Plaintiff's allegations as true, Plaintiff's claim still fails because she does not plead facts to show control over the alleged harasser as required by *Murrell. Id*. In this case the alleged harasser was not even a United States citizen, let alone a District student. Rather, the alleged harasser was a foreign citizen, living and attending school in Brest, France. Plaintiff has not plead any facts, nor could she truthfully do so, that Stern or any other District employee possessed "substantial control" over the harasser.  Indeed, they did not. Accordingly, Plaintiff's Title IX claim fails. *See Murrell,* 186 F.3d at 1247.

### 2. The District did not have knowledge of the sexual assault until April 10, 2017.

Even if an assault by non-District student could give rise to a Title IX claim, Plaintiff's claim fails because she has not pled facts to show the District was deliberately indifferent to sexual harassment about which it had actual knowledge. Actual knowledge of peer sexual harassment occurs when an official with authority to take action to address the harasser learns of it. *Rost,* at 1119; *E.g.*, *Ross v. Univ. of Tulsa*, 859 F.3d 1280, 1283 (10th Cir. 2017). A plaintiff must show a district official had "actual knowledge" of the harassment. *Doe v. Green*, 298 F. Supp. 2d 1025, 1033 (D. Nev. 2004); *see also Halvorson v. Indep. Sch. Dist. No. I-007 of Okla.*, 2008 WL 5101285, at *2 (W.D. Okla. Nov. 26, 2008) ("[T]he District cannot be held liable under Title IX based on the principle of constructive notice.").

### a. The fact that Plaintiff's host brother was a boy does not provide actual knowledge of sexual harassment under Title IX.

In numerous places throughout the Complaint, Plaintiff asserts that the District was on notice of a potential sexual assault before it occurred because the host family to whom she was assigned in Brest had a son. She baselessly asserts that the mere fact that a member of the host family was a male was sufficient to place the District on notice that the boy would rape her.

Notice for purposes of Title IX liability requires that the District have specific knowledge that the alleged perpetrator may sexually assault the Plaintiff. The mere fact that the host student is a boy and Plaintiff is a girl is simply not enough. *See Rost*, 186 F.3d at 1127-28 (plaintiff's statement that boys were "bothering her" was not enough to place the district on notice that they were sexually assaulting her); *K.B. v. Daleville City Bd. of Educ.*, 536 Fed. Appx. 959, 965 (11th Cir. 2013) (other students' complaints that janitor was "undressing them with his eyes" were insufficient to support plaintiff's Title IX claim.).

### b. The District did not have notice of the assault until Stern notified Murgel on April 10, 2017.

Plaintiff alleges that she notified Stern of the assault at approximately 11:30 p.m. on April 6, 2017. Compl. ¶ 38, 45. Because Stern is a teacher, she is not an "appropriate person" for purposes of notice to the District under Title IX. *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 660 (5th Cir. 1997) (Notice to "teachers, coaches, [] janitors," and counselors is insufficient.). It was not until Stern notified Principal Murgel on April 10, 2017 that an appropriate District official under Title IX was notified of the assault. *Id.*

### 3. Plaintiff cannot show that any District employee was deliberately indifferent to Plaintiff's allegation of sexual assault.

Deliberate indifference occurs where "the response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *J.M. ex rel. Morris,* 397 Fed.Appx. at 450. A plaintiff must do more than allege an unthorough investigation or inadequate disciplinary consequences. *Rost,* 511 F.3d at 1122. A showing of simple or even heightened negligence will not suffice. *Id.* Actions and decisions by officials that are merely inept, ineffective, or negligent do not amount to deliberate indifference. *Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998). Plaintiff fails to plead facts showing that the District was deliberately indifferent to her allegation of sexual assault.

### a. Stern was not deliberately indifferent to Plaintiff's alleged sexual assault.

As discussed above, Stern learned of the assault at 11:30 p.m. on April 6, 2017 in Paris, France, almost two days after the students and chaperones left Brest and after Plaintiff was no longer at risk of abuse from the alleged perpetrator. While the District maintains that notice to

Stern is insufficient to impose Title IX liability on the District, even if notice to Stern had been sufficient, she was not deliberately indifferent to Plaintiff's allegation of sexual assault.

Plaintiff asserts that Stern was deliberately indifferent because she did not investigate the alleged sexual assault or report it until she returned to the United States. However, the facts pled by Plaintiff do not demonstrate deliberate indifference. Plaintiff's allegations demonstrate that Stern did investigate the assault by speaking to Plaintiff and her friend about it while in Paris. After speaking with Plaintiff, Stern assumed Plaintiff's allegation was true; hence, she had no reason to interview the male host student who was in Brest. Stern's investigatory actions may not have been as thorough as Plaintiff liked, but they were not unreasonable under the circumstances, nor did they rise to the level of deliberate indifference. *See Rost,* 511 F.3d at 1122 (district was not deliberately indifferent where it believed plaintiff's allegation and, as a result, did not interview alleged perpetrators). In any event, Plaintiff's belief that the investigation was not thorough is insufficient to demonstrate deliberate indifference. *Id.*

Nor does Stern's delay in reporting the alleged assault to the District constitute deliberate indifference. Plaintiff asserts she first told Stern about the assault in Paris, France, at 11:30 p.m. on April 6, 2017, almost two days after leaving Brest. Significantly, by the time Stern learned of the assault, Plaintiff was in no further danger of sexual harassment because the alleged harasser was no longer anywhere near her. He was in an entirely different town. Plaintiff alleges that Stern notified Murgel about the assault the morning of April 10, 2017, the first day she returned to school. This is a gap of approximately three days, during which Plaintiff was at no risk of further abuse. The fact that Stern waited only three days, until she returned to the United States, to report the assault to her principal was not unreasonable given that she learned of the assault while in a

different country.  At most, it was negligent.  However, mere negligence is insufficient to establish Title IX liability. *See Rost,* 511 F.3d at 1122; *I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 369 (5th Cir. 2019) (internal quotations and citations omitted) ("negligent delays, botched investigations of complaints, due to the ineptitude of the investigators, or responses that most reasonable persons could have improved upon do not equate to deliberate indifference.").

> **b.  Murgel was not deliberately indifferent to Plaintiff's alleged sexual assault.**

Plaintiff alleges that Murgel was deliberately indifferent to the alleged sexual assault because she failed to investigate it and failed to report potential child abuse in accordance with Colorado's Mandatory Reporting Law.  Plaintiff's allegations do not support her claim.

Significantly, Murgel did not know that Plaintiff had been placed in a housing assignment with a boy. Compl. ¶ 21. Nor did Murgel know, during the time Plaintiff was in France, that the male host student made her uncomfortable, as she does not allege that she told anyone that information at the time it occurred. Murgel first learned of the alleged sexual assault on April 10, 2017, by speaking directly to Stern who reported Plaintiff's allegation that she had been sexually assaulted. Compl. ¶ 45. Murgel accepted Plaintiff's allegations as true, hence no further investigation was required. *See Rost,* 511 F.3d at 1122. Nonetheless, after speaking with Stern, Murgel called a meeting involving herself, Stern, DCIS Dean Wilson, Social Worker Endicott, and Plaintiff's mother, wherein Murgel notified them that Plaintiff had been sexually assaulted in Brest, France. *Id.* at ¶ 46. Murgel told Plaintiff and her mother that the District would "do everything we can to help support" Plaintiff but stated she it would be difficult to pursue criminal charges against the male host student because the assault occurred in another country. *Id.* Of course, because the alleged sexual harasser was not a District student and did not even live in the

United States, the District had no control over him and could not discipline him or even compel him to participate in an interview. Immediately after the meeting, Endicott and Plaintiff reported the sexual assault to the Denver Police Department ("DPD") and SRO Henry. *Id.* at 47. Additionally, the same day that Murgel learned of the alleged sexual assault, she ended Stern's employment with the District. *Id.*

In short, Plaintiff's allegations do not demonstrate that the District was deliberately indifferent to her allegations of sexual harassment. At best, Plaintiff's allegations indicate that she believes the District's investigation was not thorough because no one interviewed the male host student. However, an "unthorough" or "negligent" investigation is insufficient to create Title IX liability. *Rost,* 511 F.3d at 1122; *I.F.*, 915 F.3d at 369. Moreover, there was no need to interview the male host student because the District accepted Plaintiff's allegations as true. *Id*. Thus, Plaintiff cannot point to a failure to investigate to establish deliberate indifference.

### c. The District implemented remedial measures.

Further undermining her deliberate indifference claim is the fact that the District took immediate and specific actions to support her when it learned of the alleged assault. Deliberate indifference occurs when a plaintiff pleads that a school district's actions, or inactions following a report of sexual harassment subjected her to further harassment or made her "vulnerable to" further harassment. *Farmer v. Kansas State University,* 918 F.3d 1094, 1103 (10th Cir. 2019). Plaintiff fails to assert, nor could she, that the District's actions following the report of the assault led to further harassment or made her vulnerable to it.

By Plaintiff's own allegations, the District strove to support her. The District offered her "various accommodations in order to complete her classes," assigned her a social worker who met

with her regularly; and placed her on a 504 Plan to provide additional emotion and academic supports. Compl. ¶¶ 53-54. The District also ended Stern's employment, ensuring that Plaintiff would not have classes with her going forward. *Id.* at ¶ 47. The District was not deliberately indifferent to Plaintiff's allegations; rather, it took reasonable measures to assist Plaintiff in completing the school year. Plaintiff alleges no facts to support the proposition that she was further harassed or was at risk of being harassed. Indeed, she was not. Hence, the District was not deliberately indifferent to Plaintiff's harassment report. *Farmer,* 918 F.3d at 1103.

Because Plaintiff fails to plead facts showing that the District was deliberately indifferent to sexual harassment of which it had actual knowledge, her Title IX claim must be dismissed.

**B. Plaintiff fails to plead facts to support her § 1983 sex discrimination claims.**

Plaintiff's second and third causes of action assert sex discrimination claims against District Defendants Boasberg and Murgel based on: (a) an alleged failure to train/supervise regarding Title IX sex discrimination (second claim); and (b) sex discrimination in violation of the Equal Protection clause (third claim). Boasberg and Murgel are entitled to qualified immunity.

"Liability under § 1983 must be predicated upon a deliberate deprivation of constitutional rights by the defendant and not upon mere negligence." *Id.* (citing *Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir.1992)). To state a claim of "deliberate" discriminatory conduct, a plaintiff must prove "defendants actually knew of and acquiesced in" the violation of Plaintiff's constitutional rights. *Id.*, *citing Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir.1995)). Additionally, to impose § 1983 liability on the individual Defendants, Plaintiff must show that the individual defendants were personally involved in the alleged constitutional deprivation. *Foote v. Spiegel,*

118 F.3d 1416, 1424. (10th Cir. 1997); *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). "Supervisory status alone does not create § 1983 liability." *Foote,* 118 F.3d at 1424.

When an individual defendant raises the qualified immunity defense, "the burden shifts to the plaintiff to meet a strict two-part test." *Cassady v. Goering*, 567 F.3d 628, 634 (10th Cir. 2009). A plaintiff must show: (1) that the defendant violated a constitutional right; and (2) that the right was clearly established at the time of the conduct. *Id*. It is insufficient to merely cite a general proposition of law or to define such law at a "high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011); *Douglas v. Dobbs*, 419 F.3d 1097, 1101 (10th Cir. 2005) ("the relevant inquiry must be undertaken in the specific context of the case."). Rather, a plaintiff must show that the official would have known that his "particular conduct" in the situation he confronted violated a plaintiff's constitutional right. *Id*. It is not enough that a case may exist regarding the same generalized principles; to constitute clearly established law, the cases must be so factually similar that it would put the government official on notice that his or her specific conduct in that situation would violate the plaintiff's rights. *Yeasin v. Durham*, 2018 WL 300553, *5 (10th Cir. 2018) ("The relevant case law must be particularized to the facts of the case currently before the court.").

1.    ***Defendant Boasberg.***

Plaintiff fails to allege any facts showing that Boasberg violated her constitutional rights in derogation of clearly established law.  Nor does Plaintiff allege any facts showing that Boasberg was personally involved in or acquiesced to any sex discrimination or harassment.

Plaintiff makes the conclusory allegation that Boasberg "forced her to reside with a male student" but fails to plead any facts showing how this is so. To the contrary, Plaintiff admits that Boasberg was not personally involved in the housing assignments and that Stern did not tell

anyone, including Boasberg, about the housing assignment. Compl. ¶ 21. In short, Boasberg did not personally participate in or acquiesce to any violation of Plaintiff's constitutional rights. This alone defeats her claim. *Foote,* 118 F.3d 1424; *Gallagher*, 587 F.3d at 1069. Furthermore, there is no law that would have put Boasberg on notice that allowing a student to stay in a private bedroom in a house where a boy lived would violate her constitutional rights. Indeed, no such law exists. Because Plaintiff cannot show that Boasberg personally participated in or acquiesced to a violation of Plaintiff's constitutional rights in derogation of clearly established law, Boasberg is entitled to qualified immunity from Plaintiff's § 1983 claims.

In an attempt to salvage her claims, Plaintiff asserts that because Boasberg was the Superintendent, he had a "duty to know and ensure the safety of all students" and he acted *through Stern*, to place Plaintiff in an unsafe situation. ¶¶ 1, 21, 22, 24, 25. This argument fails as a matter of law. There is no vicarious liability under § 1983 nor is supervisory status alone sufficient to impose liability on a defendant. *See Foote*, 118 F.3d at 1424 (supervisory status alone does not create § 1983 liability). Notably, Plaintiff fails to assert any facts to show that Boasberg even knew about the trip, let alone was involved in its planning or in housing assignments. Indeed, there is not one single factual allegation showing that Boasberg knew of the alleged sexual assault and failed to address it. Plaintiff's allegations that Boasberg is vicariously liable for Stern's alleged misconduct merely because he is the superintendent are without basis in law. *Id.*

Plaintiff further asserts the conclusory allegation that Boasberg failed to fulfill his duty to "train and supervise" employees, specifically Murgel and Stern, about the District's mandatory reporting and Title IX policies, and that his failures led to Plaintiff's sexual assault. ¶¶ 8, 22, 24, 27, 113. Plaintiff fails to identify any facts to support her contention that it was Boasberg's duty

to train employees regarding these policies. Nonetheless, even if he did have such a duty, Plaintiff's own allegations undermine her failure to train claim. Plaintiff alleges that Murgel and Stern knew of the District's mandatory reporting and Title IX policies and failed to follow them. Compl. ¶ 114. In short, the allegations show that Stern and Murgel were, in fact, trained in the relevant policies, undermining Plaintiff's failure to train claim.

Additionally, Plaintiff's own allegations undermined her claim that Boasberg failed to train Murgel. Plaintiff admits that Murgel did not know about the housing assignment and did not learn of the sexual assault until April 10, 2017, when Stern notified Murgel. Immediately thereafter, in accordance with District policies, Murgel reported the sexual assault to a social worker who then reported it to the police. Moreover, Murgel spoke to Plaintiff and implemented remedial measures including offering multiple accommodations, assigning Plaintiff a social worker and creating a Section 504 plan for her. These allegations evidence that Murgel had been trained in the policies because she knew of and followed them. Because Plaintiff's own allegations show that Murgel did not violate any District policies, her allegation that Boasberg failed to train or supervise Murgel as to those policies fails.

### 2.    *Defendant Murgel.*

Plaintiff asserts that Murgel is vicariously liable for violating Plaintiff's constitutional rights to be free of sex discrimination because she was Stern's supervisor. Plaintiff also alleges that Murgel failed to fulfill her duty to train and supervise Stern with respect to the District's mandatory reporting and Title IX policies, leading Plaintiff to becoming a victim of sexual assault. Murgel is entitled to qualified immunity from these claims.

As to the housing assignment, Plaintiff asserts that Murgel is vicariously liable for Stern's actions in assigning Plaintiff to a host family who had a son. However, as explained above there is no vicarious liability under § 1983.  Rather, Plaintiff must allege facts showing Murgel personally participated in or acquiesced to violations of Plaintiff's constitutional rights in derogation of clearly established law.  Plaintiff does not assert that Murgel was personally involved in the housing assignment whatsoever, nor that Murgel acquiesced to the assignment.  To the contrary, Plaintiff specifically alleges that Murgel did not know that Plaintiff had been assigned to a family with a host brother.  Indeed, she even alleges that if Murgel had known, she "would have done something." Compl. ¶ 21. There are no facts showing that Murgel violated Plaintiff's constitutional rights.  Moreover, as explained above, there is no law that would have put Murgel on notice that assigning Plaintiff to stay in a private bedroom in a house where a boy lived with his family would violate Plaintiff's rights.  Thus, Murgel is entitled to qualified immunity.

As to the alleged failure to train/supervise, Plaintiff ostensibly asserts that Murgel was required and failed to train Stern regarding mandatory reporting and Title IX policies. However, as discussed above, Plaintiff specifically asserts that Stern was well aware of the requirements of the policies and failed to follow them. Thus, she had been trained in them.  Any deviation from the policies, was due to Stern's own actions or inactions and not to a failure on Murgel's part.  Accordingly, the claims against Murgel fail.

**C.    Plaintiff's fourth claim for relief, for violations of the "Claire Davis School Safety Act" is subject to dismissal.[3]**

---

[3] Plaintiff's fourth and fifth claims for relief are state law claims for which the Court need not exercise jurisdiction if the federal claims are dismissed.

Plaintiff has asserted a "Claire Davis School Safety Act" claim against Boasberg and Murgel only. However, the "Claire Davis School Safety Act" does not create a cause of action. Rather, it provides a limited avenue for waiving governmental immunity for tort claims under the Colorado Governmental Immunity Act ("CGIA"). Accordingly, Plaintiff's fourth claim appears to be some sort of tort claim against Murgel and Boasberg, although she fails to identify what that tort claim is. This failure alone bars her claim.

Regardless, any tort claim asserted against Boasberg and Murgel is barred by the CGIA. C.R.S. § 24-10-108; *Robinson v. Ignacio Sch. Dist.*, 328 P.3d 297, 299 (Colo. App. 2015). Under the Claire Davis School Safety Act, a school district employee's immunity is waived related to "incidents of school violence" if the employee's conduct is willful and wanton. *See* C.R.S. § 24-10-106.3(4); *Wilson v. Meyer*, 126 P.3d 276, 282-83 (Colo. App. 2005). To prove willful and wanton conduct, a plaintiff must show that the employee "purposefully pursued a course of action or inaction that he or she considered would probably result in the harm to Plaintiff." *Castaldo v. Stone*, 192 F. Supp. 2d 1124, 1141 (D. Colo. 2001). Willful and wanton conduct amounts to more than negligence or gross negligence. *Id.* at 1142. Here, Plaintiff fails to plead facts showing an act of school violence that was reasonably foreseeable, and fails to assert that Boasberg or Murgel engaged in willful and wanton conduct. Hence, Plaintiff's claims are barred by the CGIA.

1. **Plaintiff's sexual assault is not an act of school violence under the statute.**

Under the Claire Davis School Safety Act, an act of school violence is defined as murder, first degree assault, or felony sexual assault that is "reasonably foreseeable" and occurs at school or during a school sponsored event. *See* § 24-10-106.3(2)(b). While the alleged sexual assault may constitute a felony sexual assault under Colorado law, there are no facts alleged to support the

conclusion that it was reasonably foreseeable. As discussed in detail above, Plaintiff merely asserts that the individual District Defendants should have known that Plaintiff would be the victim of a sexual assault because she was assigned to stay with a host family who had a son instead of a daughter during her stay in Brest, France. The mere fact that a boy lived in the house is insufficient to demonstrate that a sexual assault was reasonably foreseeable. Indeed, Plaintiff's allegation assumes that all males are rapists. This is an untenable position to take. It is not "reasonably foreseeable" that Plaintiff would be the victim of a sexual assault simply because she was assigned to stay in a private bedroom in a house where a boy lived with his parents. Because there are no facts showing that the alleged sexual assault was "reasonably foreseeable," the CGIA is not waived, and Plaintiff's claim fails. *See* § 24-10-106.3(2)(b).

      **2.**    **Plaintiff fails to assert that Boasberg or Murgel engaged in willful and wanton conduct leading to the sexual assault.**

Even if the sexual assault is characterized as an act of school violence that was reasonably foreseeable, there are no allegations that Boasberg or Murgel engaged in willful and wanton conduct. Indeed, Plaintiff admits that neither of them knew about the housing assignment because Stern did not tell anyone. Compl. ¶ 21. Because they did not know that Plaintiff was assigned to a host family who had a son, they certainly could not have acted in a manner that they "considered would probably result in the harm to Plaintiff." *Castaldo,* 192 F. Supp. 2d at 1141. Accordingly, Boasberg and Murgel are immune from whatever tort claim Plaintiff is trying to assert.

    **C.**  **Plaintiff's fifth claim for relief against Murgel for violation of Colorado's Mandatory Reporting law fails.**

Plaintiff asserts that Murgel violated Colorado's Mandatory Reporting law by failing to report Plaintiff's alleged sexual assault. Plaintiff's claim against Murgel fails because she reported it on April 10, 2017, as soon as Stern told her about it.

Section 19-3-304 requires mandatory reporters, such as school principals, who have "reasonable cause" to suspect that a child has been subject to abuse or neglect to report or "cause a report to me made" to the "county department" or "local law enforcement agency." § 19-3-304(1)(a). Plaintiff asserts Murgel first learned of the alleged sexual assault on April 10, 2017, when Stern reported the assault to Murgel. It is undisputed, based on Plaintiff's own allegations, that Murgel reported the assault to a social worker and caused a report to be made to law enforcement on April 10, 2017, the very same day Murgel learned about the assault. Accordingly, the allegation demonstrate that Murgel complied with Colorado's Mandatory Reporting law, and Plaintiff's claim against her fails.

**D. Plaintiff's seventh claim for relief for declaratory and injunctive relief must be dismissed for lack of standing.**

A "plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future." *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991). Plaintiff fails to plead any facts showing she has a good chance of being "likewise injured" in the future. Plaintiff's assailant resides in another country and is not a DPS student. Further, there are no allegations that she will ever see him, much less be in danger of being assaulted by him, again. Accordingly, she does not have standing to assert a claim for injunctive or declaratory relief. *Id*.; *Wakeland v. Montano*, 203 F.3d 836, *5 (10th Cir. 2000) (plaintiff who failed to show likelihood of being similarly injured in the future lacked standing to seek declaratory or injunctive relief).

20

RESPECTFULLY SUBMITTED this 2nd day of July, 2019.

SEMPLE, FARRINGTON, EVERALL & CASE, P.C.

By: _____s/ Mary B. Gray_____
Holly Ortiz
Mary B. Gray
1120 Lincoln Street, Suite 1308
Denver, CO  80203
(303) 595-0941
hortiz@semplelaw.com;
mgray@semplelaw.com


## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of July, 2019, a correct copy of the foregoing **DISTRICT DEFENDANTS' MOTION TO DISMISS** was filed and served via CM/ECF to the following:

Richard J. Banta
501 S. Cherry Street
Suite 1100
Denver, Colorado 80246

David A. Martinez
1461 Pennsylvania Street
Denver, CO 80203

Eudoxie (Dunia) Dickey
Civil Rights & Employment Law Advocates, LLC
2300 Walnut St. #123
Denver, CO 80205

By: _____s/Steffie Cheng_____

S:\DPS\Mendoza, Daiana Notice of Claim\PLEADINGS 19cv01210\Drafts\Motion to Dismiss 070319 (FINAL).docx